FRANK A. BERRY, APPELLANT, v. THE KNIGHTS OF COLUMBUS HOME ASSOCIATION, OF ATLANTIC CITY, NEW JERSEY, A CORPORATION, RESPONDENT.

Argued June 3, 1929—Decided February 3, 1930.

This is an appeal from the Circuit Court in which Judge Sooy filed the following conclusions:

"This case was submitted on a stipulation of facts and testimony taken before me without a jury.

"The case arises out of a contract between the parties by the terms of which plaintiff was to have been paid and has, in part, been paid for his services as architect in the erection of a building for defendant.

"Defendant admits that there is a balance due to the plaintiff which balance it is willing to pay but plaintiff says that the balance due is in excess of that conceded by defendant, hence this suit.

"Plaintiff says that the contract between the parties provided that he was to be paid for his services the basic rate of five per cent., provided that the work contemplated by said contract should be let under one contract, but that the work was, in fact, not so done, but some thirty contracts were awarded; that the work of plaintiff under the thirty contracts was greatly in excess of what it would have been under one contract; that the contract between the parties is silent as regards compensation for the extra work and that the law will read into the contract an implied promise on the part of defendant to pay for this extra work and that parol evidence is admissible to complete the original contract in those respects in which it is obviously incomplete.

"Counsel for plaintiff has cited numerous authorities in support of the well-recognized rules of law supporting his contention that in certain cases the law will imply promises unexpressed in the contract and that parol evidence is admissible under plaintiff's construction of the contract.

"I have no quarrel with the principles of law contended for by plaintiff, but it is quite obvious that if, upon a careful reading of the contract, a complete contract is disclosed so that the parties have, in fact, contracted for compensation for the plaintiff either under the separate contract or the multi-contract theory, then the application of these principles so ably presented will not be necessary.

"Let us look at the contract itself.

"Article 1. Architects' Services: [*Inter alia*] 'the drafting of forms of proposals and contracts.'

"Article 2. Payment of fee is the basic rate, subject, however, to any modification growing out of these conditions of agreement.

"Article 3. Separate Contracts: 'The basic rate as hereinbefore defined is to be used when all of the work is let under one contract. Should the owner determine to have substantially the entire work executed under separate contracts, then the owner shall employ a superintendent, acceptable to the architect, and such clerical help as may be deemed necessary by the owner and architect.'

"Article 4. Payments: To be made 'at such time as the projected building is financed, and a contract or contracts awarded.'

"Article 5. Supervision of the Work: Provides for employing clerk of work.

"Article 1 does not help materially in a construction of article 3. It does provide that the architect shall draft 'contracts' and tends to show that the contingency of more than one contract was in mind.

"Article 2 merely provides that the modifications of the contract may be made.

"Article 3 seems to me to be clear, explicit and to fully state the agreement between the parties in such manner as to require no outside aid either for parol evidence or implication of law to incorporate therein some duty or liability not therein provided for.

"The parties say in this article that the basic rate is to be used when the work is under one contract, if not, but under

more than one, then the owner shall employ a superintendent and such clerical help as may appear to be necessary.

"It clearly appears that the superintendent and clerical force was to be provided by the owner, at its expense, and that this superintendent and clerical force was to be employed in order that the architect might be relieved of the extra duties and expenses that would naturally follow as an incident to the letting of more than one contract. In other words, to do the very things which plaintiff says he was compelled to do and for which he seeks extra compensation notwithstanding the fact that the owner did employ a superintendent and extra clerical help as provided for in article 3.

"Again 'the basic rate is to be used if the work is let under one contract.' Then what do the parties say? Do they say, if let under more than one contract extra compensation shall be paid? No. But they do say, clearly, I think, that if let under more than one contract then the owner shall be put to the added expense of more help for the architect, to wit, 'a superintendent and clerical force.' The penalty for letting the work by more than one contract was not in paying the architect more money but in relieving him of, at least, some of the work incident to the multi-contract system and the payment by the owner for the help necessary so to do. To construe this article in any other manner would be to say that the parties failed to contract on a most important subject of the contract, to wit, payment of the architect.

"Article 4 clearly shows that, when the contract was drawn, the minds of the parties were not settled on the question of how many contracts, because, in that article it is provided that the two and one-half per cent. is to be paid when 'a contract or contracts' is or are awarded. Is it likely that the parties would have thus referred to the 'contract or contracts' with no provision for architect's fees in the event 'contracts' were let?

"If plaintiff's contention is sound it results in this situation. The parties to the contract agreed to the payment of a basic rate of five per cent. if only one contract was let, but,

if more than one contract was determined upon, that then the payment of the architect was to depend on, either a further agreement between the parties, or, upon an implied promise to pay. I cannot bring my mind to any such a result after carefully studying the contract. I cannot see how the parties could have more clearly expressed their agreement than they have. They have evinced an uncertainty as to how the building would be erected—whether by one or many contracts. They have said if by more than one contract, then the owner would be bound to pay the architect five per cent. and, further, to employ a superintendent and such clerical help as necessary, if by one contract, then the basic rate alone, the architect to employ his own clerical force and to do his own superintending, other than as provided in article 5, *i. e.,* 'clerk-of-the-work' to be employed under certain conditions.

"My views, as above expressed, may be effectuated by the entry of judgment for the plaintiff for the amount admitted by the defendant to be due."

For the appellant, *Lee F. Washington.*

For the respondent, *Thompson & Hanstein.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Judge Sooy in the Circuit Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.